IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1857.

---

JOEL M. JOHNSON and ALBERT SMITH *vs.* THE STATE.

1. In stating the term at which an indictment is found, if the year is stated in Arabic figures, instead of English words, it is no ground for reversal on writ of error.

2. Judgment against two defendants, jointly indicted, was entered as follows: "It is considered that the said J. M. J. pay a fine of two hundred and fifty dollars, and that the said A. S. pay a fine of one hundred dollars, and that they stand committed until the fine and the costs of prosecution be paid." *Held,* that both defendants were made liable for the costs of the prosecution, and each one for his respective fine, and that the judgment was substantially correct.

3. An indictment for conspiracy, charging a combination falsely to charge a person with an offence, and to procure his arrest, setting out an act done in execution of the design, is sufficient.

4. If the indictment charge that the defendants falsely conspired, it is not necessary to aver the innocence of the party against whom the conspiracy is found, or that he was falsely charged.

5. If it appear on a trial for misdemeanor that the act charged involves a higher crime, the proceedings will be arrested. But unless it appear that both offences are involved in the same act, the lesser offence is not merged in the higher.

6. On an indictment for conspiracy, the defendants may be convicted, although it may appear that they have accomplished their designs through perjury or subornation of perjury. The false oath is merely the means of accomplishing the act designed, and not the same act.

313

7. Errors assigned on the admission of testimony can only be presented on a bill of exceptions.

8. A judgment will not be reversed for any error, unless it is such as may have prejudiced the defendant in maintaining his defence upon the merits.

This cause came before the court by a writ of error, to remove to this court the judgment of the Court of Oyer and Terminer and General Jail Delivery in and for the county of Bergen.

The plaintiffs in error, Joel M. Johnson and Albert Smith, were indicted, with others, for a conspiracy. The indictment was as follows:

Bergen Oyer and Terminer and General Jail Delivery, December Term, A. D. 1854.

Bergen county, to wit: The grand inquest of the State of New Jersey in and for the body of the county of Bergen, upon their oaths present, that Susan Ann Smith, Albert Smith, Maria Smith, Joel M. Johnson, and Richard Van Winkle, late of the township of Franklin, in the said county of Bergen, wickedly devising and intending one William W. Packer, not only of his credit and good name unjustly to deprive, but also to obtain and acquire to themselves of and from the said W. W. P. divers sums of money, and large amounts of property and other valuable things, on the fifth day of October, in the year one thousand eight hundred and fifty-four, with force and arms, at the township aforesaid, in the county aforesaid, and within the jurisdiction of this court, did amongst themselves unlawfully conspire, combine, confederate, and agree to extort, obtain, and procure of and from the said W. W. P., large sums of money, and a large amount of property, and security for a large sum of money, for their own use; and in order to extort, obtain and procure the same, did corruptly and unlawfully conspire and agree together falsely to charge, and cause to have falsely charged · the said W. W. P. before one of the justices of the peace of the said county, on and by the oath of the said Susan Ann

Smith, with having got the said S. A. S., she then being a single woman, with child of a bastard, and to procure the issuing of a warrant thereupon by such justice of the peace for the arrest of the said W. W. P., and when the said W. W. P. should be so arrested and under duress of imprisonment, to extort, obtain, and procure from the said W. W. P. said money, property, and security for money for their use, by offering to receive the same for the suppression and compromise of the said charge, and for the liberation of said W. W. P. from arrest and imprisonment under such warrant. And the jurors aforesaid, upon their oath aforesaid, say, that the said S. A. S., A. S., J. M. J., M. S., and R. V. W., the defendants, in furtherance of their conspiracy afterwards, to wit, on the day and year aforesaid, at the township and in the county aforesaid, did, before one James V. Jeralemon, then being one of the justices of the peace in and for the said county, falsely charge, and cause and procure the said S. A. S., upon and by her oath, falsely to charge that the said W. W. P. was the father of the bastard of which she then alleged herself to be with child, and which she then alleged was to be born a bastard, and chargeable upon the township of Franklin, in the said county, and that upon the said charge the said defendants procured a warrant to be issued by the said J. V. J., justice of the peace as aforesaid, by virtue of which said warrant the said defendants afterwards arrested, and caused and procured to be arrested, the body of the said W. W. P., and him held in custody, and while so under arrest and in custody, then and there did unlawfully, willfully and deceitfully endeavor to obtain, extort, and procure of and from the said W. W. P. a large sum of money, security for a large sum of money, and property and things of great value, as and for a consideration or recompense to them for compromising and suppressing said charge, giving up the further prosecution thereof, and releasing the said W. W. P., and then and there the said defendants did unlawfully, willfully,

and fraudulently obtain, extort, and procure from the said W. W. P., and cause him to make, execute, and deliver a bond or obligation, under the hand and seal of the said W. W. P., bearing date the fifth day of October, in the year last aforesaid, to the said A. S., in the penal sum of two thousand dollars, upon condition that the said W. W. P. should pay to the said A. S., on the first day of May next ensuing the date thereof, the sum of one thousand dollars; also, a certain mortgage, dated the day and year last aforesaid, executed and given by the said W. W. P. on lands of him, the said W. W. P., situate in the township of Franklin aforesaid, to the said A. S., to secure the payment of the said bond, which bond and mortgage were given as the consideration or price for suppressing and compromising said charge, and releasing said W. W. P. from arrest; that the said bond and mortgage were taken and received by the said defendants from the said W. W. P. for their use, to the great perversion and obstruction of justice and the due administration of the laws, to the evil example of all others in like cases offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

And the jurors aforesaid, upon their oaths aforesaid, do further present that the said defendants, on the fifth day of October, in the year eighteen hundred and fifty-four, with force and arms aforesaid, at the county aforesaid, and within the jurisdiction aforesaid, wickedly intending to extort, obtain, and procure of and from the said W. W. P. a large sum of money, property of great value, and securities for the payment of a large sum of money for their use, and in order to extort, obtain, and procure the same, did corruptly, unlawfully, and falsely conspire and agree to charge, and cause to be charged, the said W. W. P., on and by the oath of the said S. A. S., to be taken and sworn by the said S. A. S. before one of the justices of the peace of the said county, with having got the said

S. A. S. with child of a bastard, which would, when born, be chargeable on the said township of Franklin as a pauper, and to cause and procure the arrest of the said W. W. P., and thereby to put the said W. W. P. in constraint and in fear of public infamy and disgrace, and of liability to secure and indemnify the said township of Franklin from the support of such bastard child, when born, and to extort, obtain, and procure from the said W. W. P. the said sum of money, property and security for money, for their use, by offering to receive the same as a consideration or price for the suppression of the said charge, and liberating him from arrest, and indemnifying the said W. W. P. from the pretended liability for the support of such bastard, when born.

That the said defendants, in furtherance of their said conspiracy, afterwards, to wit, on the day and year last aforesaid, at the township in the county, and within the jurisdiction aforesaid, did falsely, corruptly and willfully present, and caused and procured to be presented, to one J. V. J., then being one of the justices of the peace in and for said county, a certain writing purporting to be the voluntary examination of the said S. A. S., taken on the oath of the said S. A. S., before the said justice of the peace, by which writing it was charged and declared that the said S. A. S. was then with child, and that the said child was likely to be born a bastard, and to be chargeable to the said township of Franklin, and that the said W. W. P. was the father of the said child, and the said defendants falsely and corruptly caused and procured the said S. A. S. to make oath before the said justice of the peace that the statements and charges in the said writing *was* true, that the said defendants then and there procured a warrant to be issued by the said justice of the peace for the arrest of the said W. W. P. and put into the hands of said defendants, under and by virtue of which said warrant the said defendants afterwards, to wit, on the day and year last aforesaid, arrested, and caused and procured

to be arrested, the body of the said W. W. P., and him there held in custody, and while so under arrest and in custody, then and there did unlawfully, willfully and deceitfully endeavor to obtain, extort and procure from the said W. W. P. a large sum of money, property of great value, and securities for the payment of a large sum of money, as and for a consideration or recompense to them for the compromising and suppression of the said charge, saving him, the said W. W. P., from any public disrepute, liberating him from custody under said warrant, and indemnifying him from any liability for the support of said bastard child, when born, and the said defendants then and there unlawfully, willfully and fraudulently did obtain, extort and procure from the said W. W. P., and cause him, the said W. W. P., to make, execute, and deliver to the said A. S. a certain bond or writing obligatory under the hand and seal of the said W. W. P., dated the fifth day of October, in the year last aforesaid, by which the said W. W. P. bound himself to the said A. S. in the penal sum of two thousand dollars, the said bond, by virtue of a condition thereunto written, to be void if said W. W. P. should pay to the said A. S., on the first day of May next ensuing the date thereof, the sum of one thousand dollars, and also a certain mortgage of the same date, given by the said W. W. P. upon land and real estate of the said W. W. P., situate in the said township of Franklin, to secure to the said A. S. payment of the sum of money mentioned in the conditions of the said bond, which said bond and mortgage were given to the said A. S., by the said W. W. P., as a composition of and an agreement to suppress the said charge, saving the said W. W. P. from public scandal and disrepute, liberating him from custody under said warrant, and indemnifying him from the said pretended liability, and that the said bond and mortgage were taken and received by the said defendants for the use and benefit of said defendants, to the perversion and obstruction of justice and the due

administration of the laws, to the evil example of all others in like cases offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

On the trial before the Oyer and Terminer, the jury found Joel M. Johnson and Albert Smith guilty, and the other defendants not guilty. Johnson was adjudged to pay a fine of $250 and Smith $100, both to stand committed until the fine and costs were paid.

To reverse this judgment, the defendants brought a writ of error, and assigned numerous errors on the record. Those that are necessary for an understanding of the case appear in the opinion delivered in this court.

The cause was argued at June Term, 1856, before the CHIEF JUSTICE and Justices OGDEN, HAINES and RYERSON.

*Woodruff* and *W. Pennington,* for plaintiffs in error.

*Knapp* and *Zabriskie,* for the state.

The opinion of the court was delivered by

HAINES, J. The defendants below, Johnson and Smith, were indicted, with others, for a conspiracy, in combining falsely to charge one William W. Packer, with being the father of a child likely to be born a bastard, in order to extort from him money and securities for the payment of money. The other persons indicted were acquitted, but these defendants were convicted and adjudged to pay certain fines; and to reverse this judgment they have brought their writ of error.

Of the twenty-five errors assigned, the greater part are such as could not have prejudiced the defendants in maintaining their defence upon the merits, and therefore fall within the provisions of the second section of the act of 3d April, 1855, (*Nixon* 189,) which prohibits the reversal of any judgment given on an indictment for any imper-

fection, omission, defect in, lack of form, or for any error, except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits. The defendants, for example, could not have been prejudiced by the fact that the term at which the indictment was found is stated in Arabic figures, and not in English words; nor that the indictment is said to have been found upon the *oaths* and not upon the *oath*, of the grand jurors; nor that the petit jurors were sworn to try the defendants on the charge of a conspiracy, although there were two counts in the indictment, and so, in form, two conspiracies charged.

By the nineteenth and twentieth errors, the form and effect of the judgment is questioned, and it is insisted that each of the defendants is adjudged to stand committed until the fine imposed upon the other be paid; thus making each responsible, on the pain of imprisonment, for the fine of the other.

The language used in the record is as follows: " It is considered that the said Joel M. Johnson pay a fine of two hundred and fifty dollars, and that the said Albert Smith pay a fine of one hundred dollars, and that they stand committed until *the fine* and costs of this prosecution be paid."

This may not be as precise and explicit as it is desirable a record should be, yet on a fair reading it must be held that, by it, *each* defendant was adjudged to be committed until the fine imposed upon *him* and the costs of the prosecution be paid. He is to pay not *fines*, but *the fine*, which, as well by grammatical construction as by legal intendment, must be that which was adjudged against him. The judgment does not make each defendant liable for both fines, nor would it authorize a sheriff, on an execution upon it, to levy both fines on the property of either.

*Both* defendants are made liable for the costs of the pro-

secution, and *each one* for his respective fine, and the judgment is substantially correct.

The error assigned upon the admission of testimony can only be presented on a bill of exceptions; as none was prayed or sealed, or could be under the act of the 3d April, 1855, (*Nixon* 188, § 44,) that point cannot be considered as raised here.

The other errors may all be considered under two questions: first, whether any crime is charged in the indictment; and secondly, if there is, whether it is not merged in a higher offence, alleged to be there set forth.

If either count be good, it is sufficient to sustain the conviction. *West* v. *State*, 2 *Zab.* 236; *Cook* v. *State*, 4 *Zab.* 845.

1. It is said that the first count contains no charge of conspiracy, because the averments show a felony, in which the offence of conspiracy is merged. This objection is necessarily involved in the question of merger, and may, therefore, be considered with that.

2. The second count is said to charge no crime, but merely an agreement to procure a settlement or compounding of a charge of bastardy, *not alleging it to be false.*

Conspiracy, at common law, is a confederacy of two or more persons wrongfully to prejudice another in his property, person, or character, or to injure public trade, or to affect public health, or to violate public policy, to obstruct public justice, or to do any act in itself illegal. 4 *Black. Com.* 136, *Chitty's note* (31); 2 *Russ. on Crimes* 553.

By our statute, (*Nixon* 172, § 62,) it is where two or more persons combine and conspire to commit any offence, or falsely and maliciously to indict another for any offence, or to procure another to be charged or arrested for any such offence, or falsely to move or maintain any suit, or cheat or defraud any person of any property by any means which are in themselves criminal, or to cheat and defraud any person of any property by means which, if executed, would amount to a cheat, or to obtain money by false

pretences, or to commit any act injurious to the public health or public morals, or to trade or commerce, or for the perverson or obstruction of justice or the due administration of the law. And except in a conspiracy to commit murder, manslaughter, sodomy, rape, arson, burglary, or robbery, some act must be done in execution of the agreement to effect the object of it.

The question then is, do these counts, or either of them, charge any such offence.

The first count avers a combination falsely to charge the prosecutor with being the father of the child to be born a bastard of the body of Susan Ann Smith, and several acts done to effect the object of the combination, and is therefore not obnoxious to this objection.

In the second count, it is averred that the defendants, in order to extort from the prosecutor money and securities for the payment of money, did corruptly, unlawfully, and fraudulently conspire and agree to charge, and cause to be charged, the said William W. Packer, on the oath of Susan Ann Smith, with having begotten her with child of a bastard, which would, when born, be chargeable to the township, and to procure his arrest, and thereby put him in constraint and fear of public infamy and disgrace, and of liability to secure and indemnify the township for the support of such bastard child, when born, and to extort and obtain money and securities for the payment of money of the said prosecutor, by offering to receive the same as the consideration and price of suppressing such charge, and liberating him from arrest and indemnifying him from the pretended liability; and further, that they did cause the prosecutor to be so charged and arrested, and that they obtained from him a bond and mortgage for the payment of one thousand dollars.

The objection to this count is not well taken; because, *first*, on the face of it there does appear charged a combination falsely to charge the prosecutor with an offence and to procure his arrest, and an act done in execution of the design to effect its object.

The language of the indictment is not in terms that they conspired to make *a false charge;* but it is averred they *falsely combined* to charge the prosecutor, and to extort from him money, under the pretext of indemnifying him against the pretended liability.

The whole count clearly shows a combination to make a false charge for corrupt and unlawful purposes, as fully as if it were averred that they conspired to make a false charge.

If " the conspiracy is laid falsely," it is not necessary to aver the innocence of the prosecutor, or in terms that he was falsely charged. *Regina* v. *Best et al.,* 1 *Salk.* 174; *Rex* v. *Spragg and Spragg,* 2 *Burr. R.* 993.

Again, the facts averred bring the case fairly within the rule of the common law, and also within the scope of our statute.

It is a combination wrongfully to prejudice another in his person, by the arrest; in his character, by exposure to public infamy and disgrace; and in his property, by extorting his obligation for the payment of money. A precedent of an indictment for a like offence is to be found in 3 *Chit. Crim. Law* 1179, taken from Lord Raymond, and held to be good in *Regina* v. *Best et al.,* 1 *Salk.* 174.

It is a confederation to cause the prosecutor to be charged with an indictable offence, not for the purpose of furthering justice, but of obtaining money or property, to cheat and defraud the prosecutor of property by means which amount to a cheat.

In *Rex* v. *Hollingberry,* 6 *Dow. & Ryland* 345, a conspiracy to extort money was held to be, *per se,* an offence at common law, and that need not be charged to have been attempted by unlawful means. See, also, 4 *Barn. & Cress.* 329.

2. But it is objected that the indictment cannot be sustained, because, by the averments, the defendants were charged with a felony in which the conspiracy is merged; that two of the defendants are charged with perjury, and

four of them with subornation of perjury. It is a maxim of common law, that no man shall be put in jeopardy of life or limb twice for the same offence; and the constitution of New Jersey declares that no person, after acquittal, shall be tried for the same offence. If charged a second time, he may plead his former acquittal or former conviction. It must appear to be the same offence, and then the record will protect him.

If, therefore, on the trial for a misdemeanor, it appear that the same act involves a felony, the proceedings will be arrested; otherwise the conviction and judgment on the lesser offence may be pleaded in bar of a prosecution for the higher crime, and offenders escape without due punishment. But unless it appears that the same act involves both offences, the lesser is not merged. *State* v. *Cooper*, 1 *Green* 371; *Cook* v. *State*, 4 *Zab.* 845; *Rex* v. *Harmwood*, 1 *East's Cr. Law* 440.

In the case of John Isaac, indicted for a misdemeanor in setting fire to his own house to defraud the insurers, it appeared that houses of other persons were also burned at the same time. This was held to constitute a felony, and to merge the misdemeanor, and Justice Buller ordered his acquittal. 2 *East's Cr. Law* 1031. The firing of the houses was one and the same act, and the degree of the crime depended on the ownership, the burning of his own being a mere misdemeanor, that of others a felony.

In the case before us, the conspiracy was separate and distinct from the act of making the false accusation and causing the arrest. The one was the means of accomplishing the other, but not the same act.

But a conclusive answer to this objection is to be found in the statute itself, as well that of 33 *Ed.* 1. as of our own. It is expressly enacted that persons who confederate and bind themselves falsely and maliciously to indict another for any offence shall be guilty of conspiracy.

To procure a false indictment, there must be in most cases, if not in all, a false oath in a matter material and

Johnson v. State.

before a competent tribunal, and consequently perjury. Whether, therefore, the crimes of perjury and conspiracy be of the like or of different grades, the legislature intended to provide for the indictment and punishment of conspirators, although they may have accomplished their designs through perjury or subornation of perjury. Hence we find numerous precedents for such indictments by the most approved authors.

In 3 *Chit. Cr. Law* 1145, is a precedent, settled by an eminent crown lawyer, in which the parties were convicted of a conspiracy to release a man from imprisonment, by becoming bail under fictitious names and by means of false oath and affidavit. So in the same book, 1170, and in 4 *Went. Pl.* 94, is the precedent of an indictment for a conspiracy to hold to bail on a false affidavit, in which it is averred that one of the conspirators, in pursuance of their corrupt combination, before an officer having competent authority to administer an oath, falsely, maliciously, willfully, and corruptly, on his oath, did say and depose, swear and make affidavit, of an indebtedness, both conspirators knowing it to be false. On the principle contended for by the counsel of the defendants in this case, there was both a perjury and subornation of perjury, and yet the conspiracy was not considered by the author as merged.

In 4 *Went.* 96, is a form of an indictment for conspiracy to indict for forgery. John and Mary Spragg were convicted and punished for a conspiracy falsely to indict a person for a capital offence. On a solemn argument before Lord Mansfield, in the King's Bench, the indictment was sustained. 2 *Burr. R.* 993.

On a careful examination and review of all the points raised, I can see no error upon which the judgment should be reversed. It must therefore be affirmed.

GREEN, C. J., and RYERSON, J., concurred.

AFFIRMED, 5 *Dutch.* 453. *Cited in State* v. *Wyckoff*, 2 *Vr.* 66; *Freeman* v. *Headly*, 4 *Vr.* 541.