# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,.

## NOVEMBER TERM, 1874.

THE STATE v. YOUNG AND STAINSBY.

1. A general charge in an indictment of a conspiracy to cheat, is sufficient without setting forth the means to be used.
2. At all events, a charge of a conspiracy to cheat a municipality, imports an indictable offence, on the ground of the public character of the corporation.
3. In setting forth in the indictment an overt act, it is not necessary to state all the means used in the execution of the plot.

This was a motion to quash an indictment charging a conspiracy.

The principal averments of the indictment were to the following effect, viz.:

That James Williams, Ralph Jefferson, George H. Parkinson, Edward Carter and Joseph C. Young, (one of the defendants,) were commissioners to make an estimate of the damages to be sustained by any owner or owners of the lands and real estate which the mayor and common council had then and there determined to take and appropriate for the

opening of South Fourteenth street, in the city of Newark; and that said Young was chairman of said commissioners.

That one John W. Guenther, was the owner and possessor of a certain lot, a description of the same being set forth.

That the commissioners prepared a map which exhibited the location and course of said Fourteenth street, and the location of the said several lots to be taken in opening said street; and that in laying and opening the same, a certain portion of the lot of the said Guenther was required and which portion was described.

The charge of conspiracy was in these terms: "And the grand jurors aforesaid, upon their oath aforesaid, do further present that the said Joseph C. Young, so being then and there one of the said commissioners of the opening of said South Fourteenth street as aforesaid, and chairman of the said commission on the same, and the said William Stainsby, being then and there an Alderman aforesaid, of said city of Newark as aforesaid, being evil disposed and dishonest persons, and wickedly devising, contriving and intending, knowingly, corruptly and unlawfully to cheat and defraud the mayor and common council of the city of Newark, of the money of the said the mayor and common council of the city of Newark, on the 15th day of April, in the year 1872, at the city of Newark aforesaid, in the county aforesaid, and within the jurisdiction of this court, did wickedly, falsely, fraudulently and unlawfully conspire, combine, confederate and agree together, to cheat and defraud the said the mayor and common council of the city of Newark, of the moneys, to wit, of the sum of $1000, of the said the mayor and common council of the city of Newark, and other valuable things."

The following overt acts are then set forth: That the defendants, in pursuance, &c., procured the said Guenther to sell and convey to one Taylor, who therein acted for himself and as trustee for said Stainsby, the said tract of land for the sum of $900; and that said sum was the full and fair value of said lot; that the said Young knowing the same to be the full and fair value of said lot, and knowing that the value of

the part of the same taken as before mentioned for the said street, and that the damages of the said Taylor and said Stainsby, by reason of the taking thereof, were less than the said sum of $900, did, in pursuance, &c., wickedly, corruptly and unlawfully refuse and neglect to inform the other said commissioners that the said lot had been sold for the said sum of $900, and that the value of the part taken for said street being but a portion thereof, was less than said sum, and did then and there by " such refusal and neglect, and by other unlawful means," did cause and procure said commissioners to estimate and assess as and for the damages which the said Taylor and Stainsby sustained in respect of the lot so taken, the sum of $1300 ; and that said commissioners, the said Young being one of them, signed a report, certificate and map to that effect; that said Young afterwards presented said certificate, report and map to the common council, and said damages were therefore paid, &c.

Argued at June Term, 1874, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the state, *Abeel.*

For the defendants, *Cortlandt Parker.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The indictment placed before this court on the motion certified for our advisory opinion, is founded on an alleged conspiracy to defraud and cheat the city of Newark, in its corporate capacity.  This combination is laid in general terms, without specification of the means by which the cheat was to be accomplished.  The question has, in various cases, been discussed, whether this form of pleading is sufficient.  There are decisions that deny its fitness when applied to cases in which the object of the conspiracy is not in itself of an indictable nature, and on this account it was formerly much controverted, whether such a method of

pleading was admissible when the end was to cheat, for the reason that such unlawful act was not technically punishable as a crime, unless accomplished by the use of certain means. But I think even this scruple has, for the most part, been relinquished, so that it may now be regarded as settled, that a greater particularity is not requisite where a confederation to defraud is charged. Mr. Bishop, in his second volume on *Criminal Law*, § 171, says that the English courts now hold, although doubts were entertained in the earlier stage of the inquiry, that the words "unlawfully, fraudulently, and deceitfully, did conspire, combine, confederate, and agree together to *cheat and defraud*" one "of his goods and chattels," contain a sufficient allegation of conspiracy, without the mention of any means intended. The terms used in the present case are of equivalent import, so that, according to the doctrine which I think is thus established, and which seems to me to be well grounded in law, the conspiracy here charged, in this general manner, imports an indictable offence, and as a matter of pleading, is unobjectionable.

It is also proper here to make this additional observation. If the doctrine above recognized should be repudiated, and the principle should be adopted that this generality of allegation is proper only when the end of the conspiracy is an indictable offence; nevertheless, such a principle would not invalidate the indictment now considered. The reason is, that the project charged upon these conspirators is, *per se*, a crime. The intended victim of this concerted fraud is a municipal corporation; an artificial body contrived for the administration of local government, and is the representative, in important respects, of the civil interests of a large body of persons. A concerted plan to cheat such an institution must, upon obvious principles, be a public offence of a penal character. There are many acts and things which become punishable on the ground that they affect injuriously the rights of many, which are not so when they thus affect the rights of only one or a few. A nuisance is an illustration of this principle. Such a wrong, originating in a private trespass, as it expands

so as to work a hurt to numbers of persons, is converted into an offence against the community. I see no reason why, by analogy of reasoning, a cheat designed to be practiced against a body corporate representing the public, is not to be put on a similar footing. In a politic point of view, an injury grows in aggravation in the ratio of the number of persons injuriously affected by it, and the public is interested in the same ratio in preventing its recurrence. And public cheats not only reach large numbers of persons, but they are easy to effect and most difficult to detect and punish. There are certainly the strongest social grounds to treat and punish them as crimes, and although there may be no case precisely in point, there are those which rest upon principles which logically lead to this result. The decision in the case of *The State et al.* v. *Norton*, 3 *Zab.* 45, is, perhaps, the nearest approach to a case in point. The conspiracy there charged was to defraud, by the erasure of an endorsement on a promissory note, an incorporated bank of issue, and Chief Justice Green urged, with great force of reasoning, that such an offence was essentially a public evil, and should rank with such as were in their own nature indictable. Similarly in *Rex* v. *Starling,* 1 *Sid.* 174, the defendant having been convicted of conspiracy to impoverish the farmers of the excise, it was objected that there was no offence; but the court held it well, because it appeared that the offence tended to prejudice the revenue of the crown. So a combination to fix the price of salt, *Rex* v. *Norris*, 2 *Ld. Ken.* 300; to obtain money as a reward for an appointment to an office under government, *Rex* v. *Pollman*, 2 *Camp.* 229; to remove dutiable goods in fraud of the customs, *Regina* v. *Blake*, 6 *Q. B.* 126; to raise the price of the funds, *Rex* v. *DeBerenger*, 3 *Mau. & Sel.* 68; are cases belonging to this same class, and rest essentially on the ground that such conspiracy, if executed, would affect hurtfully not only individuals, but the public at large. An indictment alleging that the defendants conspired to defraud a public corporation, such as a city, would seem undistinguishable with respect to the legal character of the offence

exhibited, from these illustrations cited from the reports. In the present as in those cases, the evil to be suppressed is one afflicting the body of the commonwealth, and as such must be cognizable as a crime or public offence. For this reason, therefore, as well as on that first intimated, the charge of the offence in this general formula is unobjectionable.

This result is obviously decisive of all the objections taken on the argument against this pleading. Those objections, other than the one just disposed of, were raised up by counsel on the hypothesis that the nature and entire scope of the conspiracy were to be ascertained from the overt acts charged. Thus it was insisted that the charge that the defendant, Young, refused and neglected to inform his associates of the true value of the land taken for the street, was not criminal and cannot form the foundation for an indictment. It was even contended that such reticence was entirely justifiable.

The self evident answer to this argument is, that even if the premises assumed, are incontrovertible, they cannot have the affect attributed to them. The fallacy of the reasoning arises from the assumption that the means thus stated to have been employed in the execution of the conspiracy, are all the means in contemplation of law, which were used. But this is not an admissible conclusion, for all the pleader, by force of the crimes act, is required to do, is to set forth "some act" done to effect the object of such conspiracy. Such overt act may or may not be in itself criminal. The conspiracy is the crime, and the overt act bringing it within the requirement of the statute, may be a very insignificant affair. A completed crime is shown on the record before us by the averment of a criminal conspiracy, and the averment of the doing of any thing, no matter what, in furtherance of it, yielding therefore the premises claimed, the crime in this case is well charged.

But these premises, I think it is very clear, are not to be conceded. The overt acts charged are of a nature highly criminal. To regard them in any other light is, it seems to me, to put away from us the ordinary standards of morality. Stripped of its technical and superfluous language, the charge

is this : That Young, one of the defendants,. was a commis-
sioner to assess the damages by reason of the taking of lands
for a street ; that he knew the value of a certain lot, part of
which would be required ;. and that he agreed to cheat the
city, and in execution of such agreement, concealed from the
other commissioners, the real value of such lot, and he him-
self signed an assessment for a sum, for the part taken, greater
than the value of the whole lot. The result of this concert
and practice stated is that the city of Newark has paid for a.
part of the lot in question, $1300, when the value of the
whole of it at the time,. was but $900, and that one of the
commissioners, at the time he signed such assessment, was-
fully aware of the fact.. How is it possible to defend such
conduct ? It was said. that the commissioner was somewhat
in the position of a juror, who is to decide upon the evidence
produced before him. by the parties in interest, and is not at
liberty to disclose his own knowledge. But what would be-
thought of a juror who should agree with one of the parties
to the suit to take advantage of the other party, and in pur-
suance of such agreement concealed his own knowledge of the
transaction. It does not seem to me that the duty of an
officer, possessed of the information here charged upon one
of these defendants,. is at all uncertain. It was most surely,
no part of his official obligation to sit by and assist, by his.
silence and signature,. the execution of this cheat to which he
was a party.. I am not aware of any case in which, by any
possibility, a man is compelled by law to undergo such a
degradation. If in this case the officer did not have the legal
right to act upon his own individual knowledge, undisclosed
to the parties, or to communicate it privately to his associates,
it was his obvious duty to communicate his information in
the presence of all concerned and put the matter in a course
of investigation. To neglect to do so would have been, under
any circumstances, I think, gross misconduct,. and to do so in
order to give effect to a conspiracy to cheat,. was a criminal
offence.

Regarding the case in either aspect, the indictment is
sufficient, and. the Oyer and. Terminer should be so advised.·