13 N.J. Super. 510 (1951)
80 A.2d 592
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN F. MALONE, JOHN J. TOOHEY, DANIEL CASEY, JAMES CAVANAUGH, FRANK A. DEISLER AND PHILIP F. McGOVERN, DEFENDANTS. STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN F. MALONE AND DANIEL CASEY, DEFENDANTS.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided April 26, 1951.
*513 Mr. Horace K. Roberson, Prosecutor of the Pleas, attorney for the State of New Jersey (Mr. William A. O'Brien, Assistant Prosecutor of the Pleas, of counsel).
Mr. John Milton, attorney for defendant Malone (Mr. Frank G. Schlosser, of counsel).
Mr. Bennett A. Robbins, attorney for defendants Toohey, Casey, Cavanaugh, Deisler and McGovern.
*514 DREWEN, J.C.C.
These motions to dismiss are directed to the four indictments above. Those numbered 146 and 148 charge a conspiracy to violate R.S. 19:34-42, by inviting, receiving, directing and accepting contributions for "political campaign purposes" by and from persons designated as the male employees of the City of Jersey City, in general, and of the board of education and of the housing authority of said city, in particular, all of which persons together are alleged to be within that class of public employees by whom such contributions are by the statute forbidden; and with respect to whom the alleged inviting, receiving, directing and accepting thereof is likewise alleged to be forbidden. A violation of the section is a misdemeanor. R.S. 19:34-1. The conspiracy, as such, charged in each of these indictments (Nos. 146 and 148), is predicated specifically upon R.S. 2:119-1, which provides: "Any two or more persons who shall combine, unite, confederate, conspire or bind themselves by oath, covenant, agreement or other alliance: a. To commit a crime; * * * Shall be guilty of a conspiracy and be liable to the same penalty as persons convicted of a misdemeanor." The one indictment differs from the other in the dates and periods alleged. In all other respects, they are identical.
The conspiracy charged in each of the indictments Nos. 147 and 149 is to obtain money by false pretense, likewise based upon R.S. 2:119-1. The pretense alleged is that the defendants were duly authorized, according to law, to solicit and receive moneys for and on behalf of the respective party committees and candidates in the indictments named. The persons intended to be defrauded by the said pretense were, it is alleged, the employees of the City of Jersey City and the several departments thereof, already mentioned in connection with indictments Nos. 146 and 148. The offense charged in indictment No. 147 is alleged to have been with reference to the general election held November 2, 1948; that charged in indictment No. 149 is alleged to have been with reference to the municipal election held in Jersey City on May 10, 1949.
*515 First, as to indictments Nos. 146 and 148. One of the objections is that neither of these charges a crime. The statute (R.S. 19:34-42) whose violation is alleged as the object of the conspiracy reads: "No holder of a public office or position not filled by election by voters shall contribute to the nomination or the election of any person to public office or party position; but this prohibition shall not apply to a person holding an appointive office or position the term of which is fixed by law. No person shall invite, demand or accept payment or contribution from such persons for campaign purposes." The full scope of the conspiracy charged is within the allegation that the design and intent of the conspiracy was to violate the quoted statute, i.e., to commit the crime the indictments contemplate "by means of inviting, receiving, directing and accepting payments and contributions of money from the male employees of the City of Jersey City * * * for political campaign purposes * * *." The trouble lies in the difference between the generic, "contributions * * * for political campaign purposes," in the indictments, and the specific, contributions "to the nomination or the election of any person to public office or party position," in the statute. What the indictments charge is exclusively within the terms of the second of the two sentences that comprise the quoted section. It will readily be seen that this sentence, as the indictments make use of it, is completely out of harmony with the remainder of the section, unless it is subordinated to the intent and meaning of the sentence that precedes it. In that relation it can have no effect other than to render it unlawful to invite, receive, direct or accept from persons of the class described any payment or contribution which it is unlawful for such persons to make. No other import would make sense, for certainly a person may be lawfully invited or induced to do that which he may lawfully do. There is a possible theory, perhaps, though not argued or advanced, that it is within the legislative power to declare it unlawful to solicit persons in public employment to do that which such persons might lawfully do of their own accord, without the forbidden inducement. As to *516 that, it can only be said that the assertion of such a principle in the statute, if it is there at all, is inexplicit, to say the very least, and that we are not required to search out criminal provisions in the written law by dialectic. There is no reason or excuse for the appearance of the words, "for campaign purposes" in the second sentence of the section, save only on the basis indicated, that is, by way of reference to the first sentence. Were it not for what I judge to be the accident of their deceptive position in the context, it would, I am sure, never have occurred to the pleader to incorporate them in the charge.
The two indictments in question are so strictly within the scope of the last sentence and so utterly without reference to or bearing upon the rest of the section as necessarily to imply  on the hypothesis of their being declared valid  the clear independence and separability of the two parts. But, as I read them, they are neither independent nor separable. Apart from the first sentence of the section, the second has no lawful meaning. Its dependence is manifest. It is ancillary to the main purpose, a kind of aiding and abetting provision, and the words "contribution * * * for campaign purposes," which the indictments take from it  adding the word "political"  are not a statement of that purpose but a mere reference. The incongruence presented by the section as a whole may, perhaps, be explained by the inadvertent omission of the word "such" as a modifier of the phrase "campaign purposes" in the second sentence. But this is futile speculation and is mentioned only to emphasize the difficulty. All that can be said is that the character and scope of the conspiracy here charged is fixed and limited by the means set forth and that the "contributions for political campaign purposes," which are vital to the significance of the stated means, might or might not be such campaign contributions as the employees are forbidden to make, viz., contributions "to the nomination or the election of any person to public office or party position." There is simply no way of telling whether they are or not; nothing within the frame of the indictments gives a hint. Unlike indictments Nos. 147 and 149, these contain no reference *517 whatever to a campaign, political or otherwise, apart from the contributions themselves. The generalization is left free and all-inclusive. Obviously, a campaign for acceptance or rejection in a statutory referendum would not be within the penal prohibition of the statute but would be within the generalized description in the charge. The same is true of a constitutional plebiscite. Is it to be suggested that there be an inference of the unlawful character of the contributions mentioned, that is to say, that it be presumed? In my opinion, we need say no more than this: whether or not a crime was committed depends upon the existence of facts essential to the crime, particular in their nature, and about which these indictments are silent. That is enough, in my view, to demonstrate that the indictments do not charge a crime. Inferences to establish the truth of a criminal charge may be drawn from proofs adduced upon the trial thereof, there being evidential basis for it; but, certainly, the legal sufficiency of the charge may not be established by inferences drawn from within the charge itself. The proposition carries its own answer. The contrary presumption of innocence is alone sufficient impediment.
In the State's brief it is urged that "No language could be more explicit or definitive of the acts denounced than that which appears in the last sentence of R.S. 19:34-42 * * *." To this the first sentence of the cited statute is a complete answer.
The construction necessary to support the State's position raises other serious objections. If the second sentence is independent and separable it must be taken as, in itself, defining a substantive crime, as, indeed, it is contended. Then the question arises, what is a campaign purpose for which it is a misdemeanor to invite or solicit contributions? What sort of campaign is intended? The degree of vagueness and uncertainty here is better appreciated by reading the charge as pleaded without the word "political" in the phrase "for political campaign purposes." Since that word is not in the text upon which the charge is based, whatever plausibility it affords *518 is false. If it be contended that the use of the word is justified by the political tenor of the whole section, that is, by the maxim noscitur a sociis, how under the same maxim are we to exclude as a corrective of this vagueness and uncertainty that which in the first sentence of the section is so definite and certain? Moreover, if the sentences are independent and separable, it follows on the face of it that the legislative policy which is clear and explicit in the first sentence appears to be abandoned in the second. In construing a penal statute, we are not to suppose that the legislation was enacted with the intent that it come so short of the quality prescribed, and, as between a rational and an irrational or strained construction, the former is to be preferred.
Doubtless the supplying of particulars will be thought of as a sufficient remedy for the indictments as they are. It is my opinion that in this case the reasons for rejecting the idea of particulars are even clearer than were the reasons for a similar rejection by the court in State v. Jenkins, 136 N.J.L. 112 (Sup. Ct. 1947), appeal dismissed, 137 N.J.L. 209 (E. & A. 1948), and in State v. Daly, 3 N.J. Super. 247 (App. Div. 1949), certification denied, 3 N.J. 367 (1949). The response which in the present instance would have to be given to a demand for particulars, considered as adequate to the need, simply would not constitute particulars. It would have to be such as to supply the essential elements now missing in the charge. It would go not to particularize the indictments but to complete them, they being presently consistent with innocence.
A somewhat analogous situation was dealt with by the former Supreme Court in State v. Beatty, (unreported, No. 1 Jan. Term, 1946, Sup. Ct., April 1, 1946). The indictment there was based on R.S. 19:34-25b, which denounces the giving of money to any member of a district board of election "because of his membership on such board." From the opinion it appears that what the indictment alleged was that the accused gave money to a named member of a designated local election board not as compensation for services as such member, but "corruptly paid in connection with said election." *519 The indictment was adjudged insufficient and the conviction reversed. The court observed that "The importance of honest elections cannot be stressed too much; but equally important are clarity and accuracy in charges of crime in a judicial proceeding."
Looking away from the immediate case, a moment's reflection will show unmistakably, I think, how drastic a precedent would be involved in the approval of these indictments, a precedent for the use of general and inclusive terms in respects vital to the charge, when the terms in the basic statute are specific and exclusive. All extremities that could thus be sanctioned are, of course, unforeseeable, but one result is certain: The constitutional right of a defendant to be informed adequately, at the outset, in the presentment against him would be reduced to a mere chance of being informed, belatedly, depending upon the trial court's disposition of a motion for particulars.
I have considered all other objections to indictments Nos. 146 and 148 and find no merit in them. For the reasons stated, the motions directed to these indictments are granted.
Coming now to indictments Nos. 147 and 149, one objection is that they are vague and indefinite to the extent of involving the hazard of double jeopardy and that they come short of adequately informing the accused of the charges they are being called upon to meet. It is my opinion that this point of objection will be fully answered by a review of the indictments themselves. The conspiracy is charged in the established formula and in conformity with the statute; its stated object is the commission of a crime, that is, to cheat and defraud the designated persons, all male employees in the various departments of the Jersey City government, by means of pretending to them that the accused were duly authorized and lawful representatives and agents of the candidates, in the indictments named, for election as city commissioners in the then impending municipal election, and also that they were the representatives and agents of the then lawfully designated campaign manager of such candidates; *520 and that such pretenses were entirely false and untrue to the knowledge of the accused. There are further pretenses alleged, as within the design of the conspiracy, which need not be recited here. The indictments go on to charge that by color and means of the alleged pretenses the accused did cheat and defraud the said male employees of their moneys and did thus obtain from them the aggregate sum of approximately $200,000 (in indictment No. 147) and of approximately $215,000 (in indictment No. 149). In each indictment numerous overt acts are set forth.
Conspiracy "To commit a crime" is within the terms of our statute; likewise, conspiracy "To cheat and defraud a person of any property by any means which are in themselves criminal" and conspiracy "To obtain money by false pretenses." R.S. 2:119-1. A conspiracy to cheat and defraud by means of false pretense was also indictable at common law. 3 Chitty, Criminal Law (3rd Am. ed. 1836), 1179; 2 Russell, Crime (9th ed. 1936), 1451. In State v. Young and Stainsby, 37 N.J.L. 184, 187 (Sup. Ct. 1874), Chief Justice Beasley said: "Mr. Bishop, in his second volume on Criminal Law, § 171, says that the English courts now hold, although doubts were entertained in the earlier stage of the inquiry, that the words `unlawfully, fraudulently and deceitfully, did conspire, combine, confederate and agree together to cheat and defraud' one `of his goods and chattels,' contain a sufficient allegation of conspiracy, without the mention of any means intended." Apt words such as will describe the conspiracy and its object as a conclusion of law are sufficient. 2 Wharton, Criminal Law (12th ed. 1932), 1866, § 1610; State v. Garrison, 130 N.J.L. 350, 351 (Sup. Ct. 1943). It is sufficient that the indictment allege enough facts with particularity to constitute the crime charged. 2 Wharton, Criminal Law (11th ed. 1912), 1750, § 1608.
Under the head of the objection for indefiniteness, defendants stress the failure of the indictments to name the persons to be defrauded. As already seen, these persons are not identified by name but as members of a group comprising the *521 class described, that is, male employees of the designated departments of the city government. Defendants cite no authority in support of this contention. The State relies upon the principle enunciated in Archer v. State, 125 A. 744 (Md. Ct. of Apps., 1924); Glasser v. United States, 315 U.S. 60, 66; 86 L.Ed. 680 (1942), rehearing denied, sub nom. Kretske v. United States, 315 U.S. 827 (1942); and the following text in 2 Wharton, Criminal Law (11th ed. 1912), 1820, § 1663: "* * * Where, however, the conspiracy was to defraud a class not capable of being at the time resolved into individuals, or to defraud the public generally, then the specification of names is impracticable, and hence unnecessary."
It is my view that an accommodating principle legitimately emerges from the necessity indicated in the situation presented. While there is no question of the court's exercising judicial notice of the precise number of persons comprising that group, it is not incumbent on the court, under these circumstances and upon these motions, to decline to recognize, for present purposes and on the grounds to be stated, the fact that the group is numerous to the extent that it is "not capable of being at the time resolved into individuals" and that their general designation as a group does not violate the right of these defendants to be reasonably apprised of the charge they are called upon to meet. The latter consideration dominates all others. If the indictments comply with that canon the omission is not important, certainly not fatal. I think they do comply. The identification here of all the persons in question is, in effect, by way of reference to a roster of all the male employees in the named public departments of the city. The charge is a conspiracy to defraud such persons by the means described. The question posed by the objection is who were the male employees of these departments during the period covered by the accusation? I see no substantial difference in law between identification by reference to such a roster and in making the indictment itself a roster of the names. It is my judgment *522 that the apprisement of defendants is sufficient, mainly for the reason about to be stated.
There is another important consideration in this regard as I see it. The intended victims of the combination, as alleged, are described throughout in their total group aspect, that is, as "the male employees" of the departments stated. It is thus reasonably apparent from the charge, as framed, that its intent is that the male employees in question were identified in the minds of defendants themselves, not individually, but as members of the employed group and that their amenability to the concerted design arose from such membership; in a word, that the purpose of the conspiracy comprehended primarily the group as such, so that the importance ordinarily attaching to individual personal identities does not here obtain.
Further objection is made that each of these indictments is double, the argument being that they charge not only conspiracy to obtain money by false pretense but the consummated crime of false pretense as well. This has reference to the paragraph immediately following the allegation of means and immediately preceding the alleged overt acts, wherein it is charged that "by color and means of such false pretenses as aforesaid, they, the said defendants, did cheat and defraud the said male employees * * * of their moneys, and they, the said defendants, did by such color and means obtain from the said employees" the sums of money hereinabove set forth. The fallacy here appears to me to be obvious. Defendants earnestly wish the court to understand that the grand jury did not indict for the completed crime but for conspiracy to commit such crime. That is precisely the case, and so the matter stands. The defendants are indicted for conspiracy, and the issue of traverse will present the single question of guilt or innocence under that charge and no other. Defendants mistake the paragraph last quoted for a charge that carries the indictment beyond the scope of the conspiracy alleged, which it manifestly does not. In effect, the paragraph charges simply that the conspiracy was *523 completed in the attainment of its object. The charge in an indictment for conspiracy that the conspiracy has been fully executed presents no problem in duplicity. If defendants' point were to be taken as valid, it would follow that an indictment for conspiracy to commit a crime must presuppose the failure to accomplish the confederated design; either that, or, if such design be an accomplished one, the accomplishment must remain unalleged, lest otherwise the indictment be vitiated by its duplicity. I am aware of no such restriction. It is more than probable, I take it, that if the object of the conspiracy here alleged were not in itself a crime, it would not have occurred to counsel to make the point. Where the allegation of accomplishment is tantamount to the allegation of a criminal offense, it is the appearance that deceives, though in reality the situation does not differ from the analogous one where it is a non-criminal object which is alleged to have been achieved.
In criminal conspiracy the accomplishment of a criminal objective that is, in itself, a crime may be pleaded and shown. Wood v. State, 47 N.J.L. 180 (Sup. Ct. 1885); Patterson v. United States, 222 Fed. 599 (C.C.A. 6th, 1915); certiorari denied, 238 U.S. 635 (1915); Joyce, Indictments (2nd ed. 1924) 633, § 546, citing Knoell v. United States, 239 Fed. 16 (C.C.A. 3rd, 1917) and other decisions. See also Johnson v. State, 26 N.J.L. 313, 322 (Sup. Ct. 1857), affirmed 29 N.J.L. 453 (E. & A. 1861); State v. Simon, 113 N.J.L. 521 (Sup. Ct. 1934), affirmed 115 N.J.L. 207 (E. & A. 1935); State v. Profita, 113 N.J.L. 330 (Sup. Ct. 1934), affirmed 114 N.J.L. 334 (E. & A. 1935); Noyes v. State, 41 N.J.L. 418 (Sup. Ct. 1879), affirmed 43 N.J.L. 672 (E. & A. 1881).
It is next urged that the description of the pretense as "fraudulent" only, that is, the failure to describe it also as "false," negatives the criminal character of the conspiracy and nullifies the charge. The answer to this objection is that, if the inescapable sense of the whole text carries the same meaning without the word "false" as with it, the *524 omission can be of no consequence. Excluding all words not relevant to the point, the indictment is that the defendants conspired to cheat and defraud the persons mentioned "by means of * * * designedly and fraudulently pretending * * * that they, the said defendants, were the duly authorized and lawful representatives * * * of the * * * candidates * * * whereas in truth and in fact, as they, the said defendants, well knew, they were not the * * * representatives and agents for the * * * candidates" and "by color and means of such false pretenses as aforesaid, they, the said defendants, did cheat and defraud (the persons mentioned)" of moneys in the sum stated. If one "designedly and fraudulently" pretends the existence of a fact which, to his knowledge, is non-existent, it follows not only that the pretense is false but false to the pretender's knowledge. The missing adjective would add nothing to what is already expressed without it.
In answer to the objection that the indictments do not charge an intent in the defendants to achieve their own personal gain, it need only be said, I think, that one is presumed to intend the natural and necessary consequences of his acts, and further, that the particular use to which the moneys were put by defendants after accomplishing the purpose of obtaining them is immaterial.
It is finally contended that the indictments are specifically false in their averment that the "other persons," with whom the two defendants are alleged to have conspired, are persons "whose names are as yet unknown to the Grand Jurors." This, they say, is "a device (which) compounds uncertainty and is grossly prejudicial to the defendants." For proof that the averment is untrue, counsel rely on the circumstance that the other indictments brought up on this motion, Nos. 146 and 148, contain no reference to unknown persons, and that, together with the two defendants in the indictments now considered, there are in indictments Nos. 146 and 148 four other defendants, as well as 12 additional co-conspirators who are named though expressly not *525 indicated. What is urged is that the grand jury must have known the names of the persons it here represents to be unknown, since it names these persons in the other indictments. This, to me, is strange argument. There is no connection between any two of the four indictments presented on this motion, and it should be unnecessary to say that the court neither can nor should presume that there is. They are separate, individual presentments and any apparent relation is incidental. The authorities cited by defendants have no present application. Wherever the question is dealt with in the cases it is, perforce, upon the development in the trial of proofs bearing upon it. See State v. Smith, 89 N.J.L. 52 (Sup. Ct. 1916); State v. Faure, 98 N.J.L. 18 (Sup. Ct. 1922); State v. Rappise, 3 N.J. Super. 30 (App. Div. 1949). Representation made by a grand inquest in an indictment that the identity of all or some of the persons accused therein is unknown to the grand inquest is presumed to be true until the contrary has been established by proof. State v. Tachin, 92 N.J.L. 269, 277 (Sup. Ct. 1919), affirmed 93 N.J.L. 485 (E. & A. 1919); State v. Shipley, 10 N.J. Super. 245 (App. Div. 1950); Coffin v. United States, 156 U.S. 432, 39 L.Ed. 481 (1895). In Coffin v. United States, supra, at 451, Mr. Justice White declared "* * * the true rule is that, where nothing appears to the contrary, the verity of the averment of want of knowledge in the grand jury is presumed. Thus, it was said in Commonwealth v. Thornton, 14 Gray [41, 42], 43: `The fact that the name of the person was in fact known, must appear from the evidence in the case. It is immaterial whether it so appears from the evidence offered by the government, or that offered by the defendant. But, there being no evidence to the contrary, the objection that the party was not unknown does not arise.'"
The motions to dismiss indictments Nos. 146 and 148 are granted. The motions to dismiss indictments Nos. 147 and 149 are denied.