STATE, DEFENDANT IN ERROR, v. TONY TACHIN AND FRED FEDODOFF, PLAINTIFFS IN ERROR.

Argued November 6, 1918—Decided February 25, 1919.

1. While primarily sedition against the United States is a crime against the federal government, under our system of government the federal and state governments are so closely interwoven that an attack on the former may imperil the existence of the latter, and it is competent for the state to deal with such an offence when directed against the federal government alone.

2. "Hostility or opposition to the government of the United States, or of the State of New Jersey," as condemned by the supplement of 1918 to the Crimes act (*Pamph. L.,* p. 130), means such hostility or opposition as involves the subversion or destruction by force, and the right of freedom of speech cannot be properly construed to protect such an abuse of freedom.

3. In a trial on an indictment for sedition it is not necessary that there be proof of criminal intent.

4. A charge to a jury must be read as a whole in the light of a sensible construction, and although an erroneous proposition of law cannot be cured by a correct statement in another portion of the charge, no error is committed by a failure to have every sentence contain the necessary qualifications, if, upon the whole, the jury could not have been misled.

On error to the Hudson Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the plaintiffs in error, *Otto A. Stiefel.*

For the state, *George T. Vickers* (*Pierre P. Garven*, on the brief).

The opinion of the court was delivered by

SWAYZE, J.   The defendants were convicted of the violation of section 2 of the supplement of 1918 to the Crimes act. *Pamph L., p.* 130.   The specific charge was that they attempted by speech to incite, abet, promote and encourage hostility and opposition to the government of the United States in that in the presence of divers good people then and there assembled they said with a loud voice to the persons there assembled in substance that the present war in which the government of the United States is engaged with Germany was a war for the benefit of the capitalists of the world only; that the president of the United States at the behest of the capitalists was sending our men to France to be slaughtered; that the people of the United States did not need any government; and that the persons present should arm themselves for protection against the government.

The case is before us on a strict writ of error.   The defendants, for what no doubt they thought good reasons, or at least good policy, have not had the whole record certified under section 136 of the Criminal Procedure act.   This re-

lieves us from a consideration of most of the so-called assignments of error, since they challenge only the somewhat oratorical comments of the learned trial judge on the evidence, and present no legal error.

The stress of the argument of the plaintiff in error was on the constitutionality of the statute itself. It is said to be beyond the jurisdiction of the state and to violate the right of free speech.

1. Is it competent for the state to deal with such an offence when directed against the federal government alone? It has been held by the United States Supreme Court that a state may make counterfeiting of money and securities of the United States a crime (*Fox v. Ohio,* 5 *How.* 410) ; that the United States may punish the counterfeiting of foreign coin (*United States v. Marigold,* 9 *Id.* 560) ; that a state may pass laws making it a crime to harbor or secrete a fugitive slave (*Moore v. Illinois,* 14 *Id.* 13). A statute of the United States making criminal certain conduct in connection with state elections has been sustained (*Ex parte Siebold,* 100 *U. S.* 371; *Ex parte Clarke, Id.* 399), but this involves considerations different from those involved in the case of a state statute, owing to the broader sovereignty of the states. It has also been held that a man may be held criminally under a state law for extortion, where the basis of the extortion was a threat to accuse of having committed an act which was a crime exclusively against the United States and made so by a federal statute (using cigar boxes a second time). *Sexton v. California,* 189 *Id.* 319. On the other hand, a man may not be held for perjury under the state law because he makes oath before a notary public of a state upon a contested election for member of the national congress. *In re Loney,* 134 *Id.* 372. The opinions in these cases make it clear that there is no constitutional objection to a concurrent exercise of jurisdiction, but there must be a crime against the state as distinguished from a crime against the United States alone.

In the pending case the crime is sedition. Primarily sedition against the United States is a crime against the federal government, which is the direct subject of attack; but under

our system the federal and state governments are so closely interwoven that an attack on the former may imperil the existence of the latter. The right of suffrage is fundamental. That right is conferred by New Jersey upon every male citizen of the United States who possesses certain qualifications, and the meaning of "citizen of the United States," certainly since the fourteenth amendment, has been defined by federal authority. If the federal government, which is a government of delegated powers only, under the tenth amendment to the federal constitution, can properly protect by its criminal law the honesty and purity of elections, as the Siebold case decided, much more can the state government protect its own existence against sedition, which although aimed directly at the federal government, must indirectly affect the security of the state government. The Supreme Court of the United States has said, "Another vital principle is that, except as restrained by its own fundamental law, or by the supreme law of the land, a state possesses all legislative power consistent with a republican form of government; therefore each state, when not thus restrained and so far as this court is concerned, may, by legislation, provide not only for the health, morals and safety of its people, but for the common good, as involved in the well being, peace, happiness and prosperity of the people." *Haller* v. *Nebraska,* 205 *U. S.* 34, 40. In that case an act of Nebraska making criminal the desecration of the national flag by use in trade and for advertising purposes, was sustained. It is true that there was no act of congress forbidding such a desecration, and there is an act of congress punishing sedition. That fact, however, cannot operate to destroy the power of the state. The act of congress, if inconsistent, supersedes the act of the state legislature; but the cases already cited suffice to show that the two acts may both be in force, one punishing the crime against the national government, and one punishing the crime against the state government, though both crimes are constituted by the same facts. We find nothing inconsistent between the act of congress and the act of New Jersey.

2. Whether the act of 1918 violates the right of free speech depends upon its proper construction. If, as the plaintiffs in error argue, it forbids all hostility or opposition to the president or the administration of the national government, or to the existence of the government, the rule established by the Court of Errors and Appeals in *George* v. *Braddock*, 45 *N. J. Eq.* 757, would apply. Within a few months a large plurality of the voters evinced by their ballots hostility and opposition to the president, the senate and the house of representatives, in face of a direct appeal for support. Every one would see the absurdity of suggesting that the voters who thus evinced hostility and opposition to the administration of the government were guilty of a crime under the act of 1918. If the time should ever come when such a proposition is seriously defended, the end of free government would be near. The statute does not denounce hostility or opposition to those who administer the government, but hostility or opposition to the government of the United States itself. The right of citizens to express their sentiments with freedom in a proper way could not constitutionally be taken away, and as long as the constitution has vigor, men may criticise the administration, even in time of war, as they have criticised without objection during the last two years. They may even go so far, as patriotic supporters of the party in power did in fact go within the last two years, as to advocate an immediate peace and termination of the war though the terms might not be favorable, and as some patriotic citizens, without regard to party, now urge a speedy peace. The statute is not aimed at such expressions of opinion, however critical and hostile they may be. There may, moreover, under this statute, be opposition to the government itself without crime. The men who framed our present national government in 1787 necessarily opposed and condemned, and in no uncertain terms, the then existing government of the confederation. It would have been as monstrous then as now, to condemn them therefor as for a crime, and we suppose no one has ever thought of doing so. The profound changes in our system of government now proposed and pending, evince opposition, perhaps hostility, to

the government as it is, because of what seems to many patriotic citizens its too narrow and insular policy. There are patriotic citizens who favor these changes, and many, equally patriotic, oppose. One party adopt as their watchword, "America First," and oppose "entangling alliances;" another think that view antiquated and denounce those who hold it as small and untrustworthy, and their patriotism as a selfish patriotism. Everyone, however, recognizes that free and open discussion is proper, indeed desirable. We allude to these facts only to show that the broad meaning which the appellants seek to attribute to the statute in order to bring it into conflict with the constitution could not have been in the contemplation of the legislature. If no other meaning could be attributed to the language of the statute we should be forced to condemn it as unconstitutional. Our duty, however, is not to seek for a construction which would render the act invalid, but for one which would render it valid, and to adopt the latter if the words of the act are susceptible of the construction. Of the numerous authorities we need refer only to the *Chatham Drainage Case,* 35 *N. J. L.* 497, 501; *Colwell* v. *May's Landing Water Power Co.,* 19 *N. J. Eq.* 245, 249; *Road Commission* v. *Harrington Township,* 55 *N. J. L.* 327; *Grenada County Supervisors* v. *Brogden,* 112 *U. S.* 261, 268; *United States* v. *Delaware & Hudson Co.,* 213 *Id.* 366; *Plymouth Coal Co.* v. *Pennsylvania,* 232 *Id.* 531. It is easy to give a construction to the statute which will make it valid. The definition of hostility and opposition is contained in the first sentence of the section itself. "Hostility or opposition to the government of the United States, or of the State of New Jersey," means such hostility or opposition as involves the "subversion or destruction by force" of those governments. The first part of the section condemns advocacy of such subversion or destruction; the last part condemns the attempt to incite, or abet, promote, or encourage hostility or opposition, having in view the same subversion or destruction by force. Thus construed the statute only makes criminal the advocacy or the attempt to bring about the commission of what everyone would recognize as crime though they might

attempt to justify it as revolution. But revolution is a defence only when it is successful. The right of free speech cannot be properly construed to protect such an abuse of freedom.

3. The next objection is that there was no proof of a criminal intent. It is a sufficient answer to say that the statute does not make criminal intent necessary. *Halsted* v. *State*, 41 *N. J. L.* 552. The question, as the Court of Errors and Appeals said in *State* v. *Kuehnle*, 85 *Id.* 220, 224, is one of statutory construction. In the present case the acts and language charged necessarily imply a criminal intent. An attempt to incite hostility and opposition (forcible hostility and opposition as we construe it) to the government of the United States is sedition, and nothing would be added by charging an intent to create such hostility and opposition. The indictment does, however, charge that the defendants acted willfully, knowingly and unlawfully.

4. The judge charged, after stating the position of the defendants, that it was for the jury to say whether or not they believed the defence. The appellants seem to think that the judge thereby imposed upon the defendants the burden of proving their innocence. But the judge could not state the law of the case in a single sentence, and a reading of the whole charge shows that he properly imposed the burden upon the state. Almost his last words were, "The burden of proof rests upon the state in this case to prove the guilt of *both* these defendants beyond a reasonable doubt." Taken by itself this imposed too severe a burden on the state since the jury might convict one and acquit the other, as the judge afterward said. A charge must be read as a whole in the light of a sensible construction, and although an erroneous proposition of law cannot be cured by a correct statement in another portion of the charge, no error is committed by a failure to have every sentence contain the necessary qualifications if upon the whole the jury could not have been misled.

It is suggested that it was erroneous to charge that both or either of the defendants might be convicted, because one could not be guilty of abetting the crime if the other

was not guilty of committing it. The averment of the indictment, however, is not that Tachin abetted Fedodoff in sedition, but that both attempted by speech to incite, abet, promote and encourage hostility and opposition to the government. The language is the language of the statute, and while the words "attempt" and "abet" are not happy, we find nothing inconsistent with the other words, or with the idea that abetting hostility and opposition to the government may not properly be made a crime without regard to whether there is a person who is abetted. The charge to acquit Tachin unless he aided, abetted or assisted Fedodoff would on this view be erroneous, but as it was too favorable to Tachin, he cannot complain. If we should hold that "abet" necessarily implied a person to be abetted, and that the trial judge was in error in saying any one defendant could be convicted without the other, the error would be harmless, since in fact the other defendant was convicted—both defendants upon evidence that might properly satisfy the jury of their guilt.

5. The exception to that part of the charge quoted in the seventeenth assignment of error cannot be sustained. It overlooks the fact that the trial judge included in his statement of Fedodoff's language the expression that every one should be put in arms to fight against capitalism for which the war is being waged. The court was, therefore, justified in leaving it to the jury to find that the language tended to incite, aid, abet, promote and encourage hostility and opposition to the government of the United States. The fact that the judge also quoted other language of the defendant which by itself might not have transgressed the statute, was not improper. It might well be that the whole speech should be quoted. It is not alleged that the trial judge's statement of the defendant's language was garbled. We see no reason why he might not quote passages, which though harmless in themselves, had a bearing on the language counseling an appeal to arms against what the defendant at that point called capitalism.

6. Another interesting and important point is argued in the brief. The charge of the indictment was that the defendants uttered in substance certain English words therein set

forth. On the motion to quash, the averment was necessarily assumed to be true. At the trial the proof was that the words were uttered in Russian. It is said that this was a fatal variance. We do not doubt that the indictment ought to have averred, at the least, that the words were uttered in Russian. We are, however, precluded from considering this argument because it was not made in the trial court; no exception raises the question specifically, and there is no assignment of error.

The judgment must be affirmed, with costs.