[Crim. No. 2358. In Bank.—November 12, 1921.]

THE PEOPLE, Respondent, v. JOHN C. TAYLOR, Appellant.

[1] CRIMINAL LAW—VIOLATION OF SYNDICALISM ACT—INDICTMENT—SPECIFICATION OF ACTS.—An indictment charging a defendant with the commission of acts in violation of subdivision 5 of section 2 of the Criminal Syndicalism Act of 1919 (Stats. 1919, p. 281), should contain a specification of such acts.

[2] ID.—MEMBERSHIP OF UNLAWFUL ORGANIZATION — INDICTMENT — FAILURE TO STATE NAME—LACK OF PREJUDICE.—The failure to name the organization in an indictment charging a defendant with being a member of an organization denounced by subdivision 4 of

section 2 of the Criminal Syndicalism Act, is not a sufficient ground for a reversal of the judgment of conviction, in view of article VI, section 4½, of the constitution, where the indictment sufficiently charged the offense in general terms, and the defendant, who acted as his own counsel, was advised by the district attorney at the beginning of the trial as to the particular organization referred to in the indictment.

[3] ID.—CHARACTER OF ORGANIZATION—EVIDENCE—BOOKS AND PAPERS. In a prosecution under an indictment charging a defendant with being a member of an organization denounced by subdivision 4 of section 2 of the Criminal Syndicalism Act, books, pamphlets, and papers advocating criminal syndicalism and sabotage found at the headquarters of the organization are admissible as tending to show the character of the organization.

[4] ID.—QUESTION FOR JURY.—In such a prosecution, the question whether or not the particular organization was organized to advocate, teach, aid, and abet criminal syndicalism is for the jury to determine, and not for the court to infer as a matter of law.

[5] ID.—MEMBERSHIP OF UNLAWFUL ORGANIZATION—SUFFICIENCY OF EVIDENCE.—In this prosecution under an indictment containing four counts based upon subdivisions 1, 2, 4, and 5 of section 2 of the Criminal Syndicalism Act, the evidence is held sufficient to sustain the conviction on the count of knowingly belonging to an organization advocating criminal syndicalism and sabotage, but not sufficient to support the verdict on the other counts.

[6] ID.—ADVOCACY OF DOCTRINES—INDICTMENT—SPECIFIC ACTS.—An indictment charging a defendant with advocating the doctrine of criminal syndicalism and with printing or circulating books or pamphlets relating to such doctrine should designate the specific acts, and name and describe the books and pamphlets, and the statement of the offenses in the language of the statute is not sufficient.

[7] ID.—PRINTING OR CIRCULATION OF LITERATURE—CHARACTER OF—RELATIVE DUTY OF COURT AND JURY.—In prosecutions for printing or circulating pamphlets, books, or other articles advocating criminal syndicalism, if the articles are in plain and unequivocal terms, it is the duty of the court to construe the meaning and effect of the documents for the benefit of the jury, but if the instruments are susceptible of two interpretations, it is for the jury to say, on proper instructions, whether the documents are unlawful.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed and reversed.

The facts are stated in the opinion of the court.

Austin Lewis and Robert M. Royce for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

WILBUR, J.—The defendant was convicted by a jury of the crime of criminal syndicalism. The indictment contained four counts based upon subdivisions 1, 2, 4, and 5 of section 2 of the Criminal Syndicalism Act of 1919 (Stats. 1919, p. 281). He was convicted upon the first and fourth counts. The first count charged the defendant with the offense of knowingly belonging to an organization advocating sabotage, etc., and the fourth count with committing certain lawless acts defined in subdivision 5 of section 2 of the Criminal Syndicalism Act. The district court of appeal, first district, division one, sustained the conviction as to the first count, charging an offense under subdivision 4 of section 2 of the Criminal Syndicalism Act, and reversed the case as to count 4, charging an offense under subdivision 5. The defendant petitioned for a transfer to this court on the ground of the insufficiency of the indictment. The petition was granted because at the time we had under consideration a similar question in the case of *People* v. *Steelik, ante,* p. 361, [202 Pac. 361], in which the constitutionality of the statute and the sufficiency of an indictment thereunder were under consideration. It was desired that the matter should be fully considered in that case and that the ruling therein might be applied in this case. If we agree with the holding of the district court of appeal that the evidence is insufficient to sustain the verdict of the jury on the fourth count, then this case becomes almost identical with that of *People* v. *Steelik,* with the single exception that in the indictment in this case, the name of the organization to which the defendant belonged is not stated. That organization is the Communist Labor Party. On the consideration of the petition for a transfer we were inclined to the opinion that where a defendant was charged with advocating a certain doctrine or printing a certain book or pamphlet or circulating the same, it was essential that the name and description of the book, document, etc., should be contained in the indictment for the information of the defendant. If there had been a conviction under counts 2 and 3 of the indictment

in this case that question would be directly involved here, but in view of the fact that the jury disagreed upon these two counts, they have been dismissed and the question is not now involved in the case. [1] As to the fourth count of the indictment in which the defendant is charged with committing acts in violation of the criminal syndicalism law in furtherance of political and industrial change, it is clear that these acts should have been specified in the indictment. The fact that the jury in the absence of such specifications found the defendant guilty of committing such acts and that the district court of appeal was unable to find any evidence in the case which justified such a conviction merely emphasizes the fact that the acts charged to have been committed should have been specified. If the crime of arson, or murder, or larceny, or malicious mischief was intended to be charged by the indictment, that charge should have been made specifically so that the defendant would be advised as to the particular charge he was called upon to meet in his defense. [2] Inasmuch as we agree with the conclusion of the district court of appeal that there was no evidence upon which to justify a conviction upon this count and, therefore, concur in the conclusion of that court that the judgment must be reversed upon that count, the only question remaining in the case with reference to the sufficiency of the indictment, in view of our decision in *People* v. *Steelik, supra,* is the question as to whether or not a charge that the defendant was a member of an organization denounced in subdivision 4 of section 2 of the Criminal Syndicalism Act is sufficient where it states the offense in the language of that subdivision without naming the specific party or organization to which the defendant is alleged to have belonged. If, however, the indictment is broad enough in its terms to include the Communist Labor Party, as is the case here, in testing the sufficiency of the indictment we are confronted with the provisions of article VI, section 4½, of the constitution, which admonishes us not to reverse cases for mere defects in the pleadings. As the indictment was sufficient to charge the offense specified in subdivision 4 of section 2 of the Criminal Syndicalism Act in general terms, we are called upon to determine in this case whether the failure to name the organization to which the defendant was alleged to belong resulted in a miscarriage of justice.

The defendant in this case acted as his own counsel and upon the *voir dire* of the jury asked the district attorney to specifically state what organization or party was referred to in the indictment for which it was intended to prosecute him. The district attorney replied, "Communist Labor Party," so that during the actual trial of the case there was no doubt in the mind of the defendant as to the organization with which he was charged with affiliating. The defendant testified on his own behalf not only that he was a member of the Communist Labor Party, but also that he had participated in its organization thereof at Chicago, Illinois, and also of the local branch in Oakland, California, and was the secretary of the local organization. In his brief on appeal he states: "One question is presented by the evidence, 'Is the Communist Labor Party of California an organization within the scope of subdivision 2 [4], section 2 of the act.' " He also states in his brief: "There is evidence and we admit that defendant went to Chicago and was in a minor capacity one of the organizers of the Communist Labor Party of America, all of which is material, if at all, for the sole reason that it shows that he knew of the purposes and objects of the party. There is evidence and we admit that the defendant took a prominent part in the organization of the Communist Labor Party of California, and the latter party affiliated with the Communist Labor Party of America. These facts could have been presented to the jury in ten minutes and the defendant never denied them." The defendant was thus fully advised, by the statement of the district attorney in response to his question, that the organization intended to be designated by count 1 of the indictment was the Communist Labor Party. In the absence of some indication in the record or some claim on appeal that the defendant was surprised by the method in which the charge against him was made and proven, we cannot see that the defendant was prejudiced by the failure to mention the name of the organization to which it is charged he belonged. He was fully advised by the indictment that he was charged with belonging to an illegal organization and fully advised by the statement of the district attorney that the particular organization intended was the one in which his membership was admitted. There was no miscarriage of justice in this case resulting from the failure to specify the

organization intended, and this court cannot reverse the judgment of conviction, even though it is clear that the indictment should have stated the name of the organization to which it was claimed defendant belonged.

[3] Error is assigned in the admission of testimony offered by the people consisting of books, pamphlets, and publications found at the headquarters of the Communist Labor Party in Oakland. This testimony was all received for the purpose of showing the character of the organization to which the defendant belonged and his knowledge of that character. It is true, as the defendant contends, that the mere possession of books and documents advocating criminal syndicalism and sabotage would not be sufficient evidence to convict of the crime of criminal syndicalism. Such evidence, however, was admissible as tending to show the character of the organization and was supplemented by other proof with reference to the nature and character of the organization, including debates over the policy of the organization in which the defendant participated, the constitution of the organization and propaganda prepared for its use, coupled with evidence that it indorsed the I. W. W. and had possession of literature used by that organization. The possession of the documents and pamphlets in question, taken alone, would be insufficient to characterize the organization, but it was one item in the evidence tending to show the nature of the organization, the weight and effect of which under the circumstances was to be determined by the jury.

The defendant calls attention to the ruling of the supreme court of the state of New Jersey in the case of *State* v. *Gabriel* (N. J.), 112 Atl. 611, and also to the opinion of Judge Anderson in *Colyer* v. *Skeffington*, 265 Fed. 17. The New Jersey case is cited as authority for the proposition that subdivision 4 of section 2 of the Criminal Syndicalism Act of this state is unconstitutional as violating the right of free assembly. The court in that case carefully distinguished the statute there held unconstitutional from one previously held valid by the supreme court of New Jersey in the case of *State* v. *Tachin*, 92 N. J. L. 269, [106 Atl. 145]. The statute held unconstitutional denounced an organization "promoting or encouraging hostility or opposition to the government of the United States or to the state of New Jersey." This was held to violate the constitutional right of the people to freely

assemble and consult together for the common good, etc. This decision has no application to a statute such as ours, which denounces organizations formed for the purpose of committing crimes against persons and property in further- ance of political or industrial changes. Our statute, on the contrary, is similar to that held constitutional in *State* v. *Tachin, supra,* and carefully distinguished in the later case of *State* v. *Gabriel, supra.* The decision by Judge Anderson in *Colyer* v. *Skeffington, supra,* represents the conclusion of that judge upon the evidence there submitted as to the char- acter of the Communist Labor Party and as to whether or not it violates the federal statute authorizing the deporta- tion of undesirable aliens. The question we are called upon to determine is whether the evidence is sufficient in this case to justify the finding of the jury that the Communist Labor Party is such an organization as denounced by the law. As pointed out in the opinion of the district court of appeal, there was abundant evidence to sustain this con- clusion by the jury. We approve and adopt the following conclusions of the district court of appeal:

"Subdivision four of section two of the act provides that anyone who organizes, or assists in organizing, or is, or knowingly becomes a member of any organization, society, group or assemblage of persons, organized or assembled to advocate, teach or aid and abet criminal syndicalism, is guilty of a violation of the statute. The first count of the indictment upon which appellant was convicted is based upon this subdivision. He contends that the evidence does not support the finding of the jury and the verdict of imprison- ment entered thereon. Under this phase of his appeal he attempts to narrow consideration to the question of whether or not the Communist Labor Party of California and the Communist Labor Party of America are organizations within the scope of the inhibitions of the criminal syndicalist act. Stated in another way, as we understand appellant's position, his contention is that in arriving at a decision in this matter the jury based its decision largely upon its interpretation of the constitution, platform and other documents setting forth the aims and objects of the communist parties, and that the construction of these documents was really a question of law for the court, and that, as a matter of law, the only evidence introduced in the case does not establish that the

organizations named fall within the purview of the statute. This contention is plausible, but it is not sound, even if the issues were narrowed to the extent that the appellant would have us go. The authorities appear to be all to the contrary. Were it only necessary in the instant case to determine the beliefs, plans and prospective actions of a large number of people organized in so-called political parties, it would be a question of fact. (*Colyer* v. *Skeffington*, 265 Fed. 17, 56.) [4] Whether or not the communist labor party of America, particularly the communist labor party of California, in the organization of the latter of which appellant took part, were organized to advocate, teach, aid and abet criminal syndicalism, was for the jury to determine and not for the court to infer as a matter of law. (*Kumpula* v. *United States*, 261 Fed. 49, 51, [171 C. C. A. 645] ; *Pierce* v. *United States*, 252 U. S. 239, [64 L. Ed. 542, 40 Sup. Ct. Rep. 205, 209] ; *Schenck* v. *United States*, 249 U. S. 47, 52, [63 L. Ed. 470, 39 Sup. Ct. Rep. 247] ; *State* v. *Moilen*, 140 Minn. 112, [1 A. L. R. 331, 167 N. W. 345, 348] ; *People* v. *Malley* (Cal. App.), 194 Pac. 48.)

"There was evidence in this case from which the jury might not be, and evidently were not willing to draw as favorable conclusions of the aims and objects of the so-called political parties to which defendant belonged, as the appellant would have us reach. Again, the activities of the appellant do not appear to have been merely confined to his being 'in a minor capacity one of the organizers of the Communist Labor Party of America,' and taking 'a prominent part in the organization of the Communist Labor Party of California.' It appears from the record that he was at one time a member of the Industrial Workers of the World, an organization commonly known as the I. W. W. When his membership in that organization ceased, if it ever did, does not clearly appear from the record. He was also state secretary and organizer for the socialist party. He conceived and broached to Alverson, a state organizer for the party and who' was a witness for the people, a plan to gain control of the 'Local' of the socialist party, with which they were affiliated, by inducing and securing a large number of members of the Industrial Workers of the World to become members of the socialist organization, thereby affording the opportunity of transforming the socialist party from a po-

187 Cal.—25

litical to a revolutionary party. With others, Taylor was a delegate to a gathering or convention of a faction, or 'left wing,' of the socialist party which met in Chicago. Dissension appears to have arisen in the meeting and a portion of the delegates either withdrew or were excluded from its deliberations. They repaired to the hall of the I. W. W. in Chicago and proceeded to organize the Communist Labor Party of America. The constitution, platform and manifesto of that organization were admitted in evidence, as were a number of reports of the proceedings of that so-called party. In the platform and program of the Communist Labor Party the organization declares itself in 'complete accord with the principles of communism, as laid down in the Manifesto of the Third International formed at Moscow,' and calls upon the working class to organize and train itself for the capture of state power by the establishment 'of organs of administration created and controlled by the masses themselves, such, as, for example, the Soviets of Russia.' The platform also declares for the transfer of private property and the means of production and distribution to the working class government, to be administered by the workers themselves, and calls upon the revolutionary working class movements of all countries to closely unite. That manifesto advocates 'the disarming of the Bourgeois at the proper time, the arming of laborers and the formation of a Communist army as the protector of the rule of the proletariat and the inviolability of the social structure.' Such, according to the manifesto, is the red army of soviet Russia, which is declared to be inseparable from the soviet state. 'Conquest of political power,' according to the manifesto, 'means not merely a change in the personnel of ministries, but annihilation of the enemy's apparatus of government; disarmament of the bourgeois, of the counter-revolutionary officers, of the White Guard; arming of the proletariat, the revolutionary soldiers, the Red Guard of Workingmen; displacement of all bourgeois judges and organization of proletarian courts; elimination of control by reactionary government officials and substitution of new organs of management of the proletariat.' The revolutionary era, according to the manifesto, 'compels the proletariat to make use of the means of battle, which will concentrate its entire energies, namely, mass action, with

its logical resultant, direct conflict with the governmental machinery in open combat. All other methods, such as revolutionary use of bourgeois parliamentarism, will be of only secondary significance.' For an interesting discussion of the effect of these declarations see *United States* v. *Wallis*, 268 Fed. 413.

"In its program, which appears to be part of its platform, the Communist Labor Party favors international alliance only with the communist groups of other countries, those which have affiliated with the communist international. It also favors organized party activity and co-operation with 'class conscious industrial unions, in order to unify industrial and political class conscious propaganda and action, and advocates conduct of the Communist propaganda and organization in the shops and to encourage the workers to organize in One Big Union.' Then follows the declaration that 'in any mention of revolutionary unionism in this country, there must be recognition of the immense effect upon the American Labor movement of the propaganda and example of the Industrial Workers of the World, whose long and valiant struggles and heroic sacrifices in the class war have earned the respect and affection of all workers everywhere. We greet the revolutionary industrial proletariat of America, and pledge them our whole-hearted support and co-operation in their struggles against the capitalist class.'

"Upon the return of Taylor and the other delegates to the Chicago convention to Oakland, steps were taken to form, and there was organized, the Communist Labor Party of California, which was closely allied with, and apparently became an integral part of the parent organization. There seems to be no doubt that its aims, objects and purposes were in full accord and in entire sympathy with the platform and principles of that body, including its allegiance to the soviet movement in Russia. At the outset of the organization meeting, those present gave three cheers for the bolsheviki, and the appellant also led the meeting in singing songs, one of which called upon:

> "'All who right and justice seek,
> Burst your bonds no longer weak,
> Unite and join the Bolshevik.
> Rise! Rise! Rise!'

"Taylor took an active part in the organization of this body. The Oakland local of the socialist party, with which appellant seems to have been allied, seceded from that organization and went into the Communist Labor Party. The appellant outlined an ambitious plan concerning the tactics to be used in accomplishing the ends of the Communist Labor Party. His plan, according to his program, was to bring about a general strike of the workers in all industries and in all governmental offices. The army and navy and the police forces of the country would be paralyzed by the general strike and the failure of telephones and telegraphs, the railroads and food supply. The 'Red Guard,' of which he was to be the organizer, was to step in and immediately take control of all state, county and city offices which were to be ruled and governed by those who were in the 'inner circle,' or those who were to be recognized as leaders of the revolution. This 'Red Guard,' according to the testimony, was to be in process of organization through those interested in the revolution, to be assembled the moment the general strike was called. This inner circle of leaders of the revolution was designated by the number '77.' Taylor referred to the uprising as the 'bloody revolution.' The red guard, it was planned, would seize the police stations and take the banks, moving all the currency and coin to one central place, there to be held by the guard. All newspapers in the locality were to be seized, except one, which, 'as a matter of revolutionary tactics,' should be spared as a medium of spreading the propaganda of the revolutionists. Advantage was to be taken by the party of the alleged unrest caused by German propaganda and discontent among soldiers returning from the war. The red guard, according to Taylor, had spies in the ranks of the American Legion and in and around the police department and in the various offices of the city hall in Oakland. Members of the inner circle had selected hiding places on the Mendocino coast and in the Sacramento valley to utilize in case of emergency.

"In outlining his further plans, according to the testimony, Taylor disclaimed any hope of success of political change through the ballot, and advocated getting results by force. He favored sabotage as a weapon of the working class against the employers and capitalists, such as pulling up rails and derailing trains in railroad strikes, destroying

machinery in factory disturbances and wrecking street cars in traction troubles. He also advocated burning hay stacks in order to bring the farmers to terms. During the time he was advocating all such measures, Taylor was active in the work of the Communist Labor Party.

"Appellant attacks the veracity of the witness Alverson, from whose lips much of the foregoing testimony was elicited, and at the trial attempted to discredit a number of other witnesses. We are not concerned with that question here. The credibility of the various witnesses and the weight to be given to their testimony were matters resting entirely with the jury.

"In addition to the foregoing evidence it was shown that the headquarters of the Communist Labor Party in the City of Oakland had been continually under the surveillance of the police authorities and agents of the federal department of justice. A newspaper, called 'The World,' was established there for the purpose of disseminating the propaganda of the organization. In the hallways of the headquarters were news stands on which were displayed and from which were sold books, pamphlets and newspapers. The meeting room of the party was in a hall adjoining. Eventually the place was raided and the police authorities seized a mass of documents and files and carried away a large number of books and pamphlets and a miscellaneous assortment of literature and publications, including copies of The World and other papers, which appears to have been devoted to disseminating the propaganda of the Communist Labor Party. Copies of the publications and documents were admitted in evidence. There was also admitted in evidence, over the objection of defendants, a number of books and publications having to do with the Industrial Workers of the World. There were books on 'Sabotage,' by Elizabeth Gurly Flynn, Walker C. Smith and Emil Pouget; 'I. W. W., Its History, Methods, etc.,' 'Revolutionary I. W. W.,' works on syndicalism, reports of the I. W. W. convention, and books and songs of the organization. Other documentary evidence of like nature was also admitted. Appellant objected to the introduction of this evidence on the ground that it was in no way shown to be indorsed by or a part of the propaganda or platform of the Communist Labor Party, and also on the ground that it was not shown to be the

property of, or in any way connected with either himself or the organization. The court admitted the various publication of this evidence on the ground that it was material to show the purpose, and expressly limited it for the purpose of establishing the nature, aims and objects of the Industrial Workers of the World in view of the approval of that organization and what it accomplished in the platform of the Communist Labor Party. We think this was a correct ruling. It also had a tendency to connect the defendant, more or less intimately, with the organization of the so-called red guard, in which, according to the witness Alverson, he was industriously engaged.

[5] "With the foregoing testimony and all of the other evidence in the case before it, the jury reached the conclusion, under apt instructions from the court, that the appellant was guilty of the charge contained in the first count of the indictment. As we have already held, with citation of authorities, at the outset of the consideration of this phase of the appeal, the matter presented was a question of fact for the jury to determine. We must therefore hold, in view of the lengthy record which we have only epitomized, that the evidence was sufficient to support the finding of the jury on the first count.

"The appellant was also found guilty under the fourth count of the indictment, which charged that he did, by personal acts and conduct, commit acts, advised, advocated, taught, and aided and abetted by the doctrine and precepts of criminal syndicalism, with intent to accomplish a change in industrial ownership and control, and effecting a political change. We are unable to see how conviction of the defendant on that charge can be sustained. The allegation was framed under the fifth subdivision of section two of the act by reference to which, it will be noted, deals with the commission, by personal act or conduct, of any of the things prohibited by the statute, and which are held to amount to the practice of criminal syndicalism. It is not shown that the defendant committed any unlawful act of force or violence, or that he personally, or with others, directed or took part in any 'unlawful methods of terrorism.' It is undoubtedly true, as the record clearly indicates, that the defendant was guilty of advocating sabotage, violence and unlawful methods of terrorism as a means of accomplishing

changes in industrial ownership and control, and effecting political changes. For that reason we are unable to understand why the jury was unable to agree upon a verdict under the second count of the indictment. We are equally unable to comprehend how it arrived at a verdict of guilty under the evidence and instructions of the court upon the fourth count. There is no evidence to warrant conviction upon that charge.

''Appellant complains of the refusal of the court to give certain instructions requested by him. Examination of these instructions clearly demonstrates that they go far afield from the issues involved in this case, and were, in the main, properly refused for that reason. The general right of the masses to strike, and the propriety or impropriety of extending sympathy to the soviet government of Russia, were not issues in this case. Certain portions of the requested instructions which were refused by the court, if segregated, might properly have been given, but the matters there involved were sufficiently covered by other instructions which the court gave. The charge appears to have been fair and comprehensive.

''As to the first count of the indictment, the judgment and the orders denying the motions in arrest of judgment and for a new trial are and each is affirmed. As to the fourth count the judgment and said orders are reversed.''

[6] As the case must be sent back for a new trial upon the fourth count, other points will be considered which may arise on the new trial. With reference to the sufficiency of the fourth count we hold that it does not state an offense because of its utter failure to state generally or specifically any crime or crimes alleged to have been committed by the defendant in furtherance of a change of industrial ownership or of political control. A demurrer thereto should have been sustained. As to the second and third counts of the indictment we do not wish to be understood as holding that an indictment couched in the language of the statute is sufficient where the charge made relates to the advocacy of doctrines or the publication and circulation of books, etc. As each separate act and publication would constitute separate and distinct violations of the statute, the specific acts charged should be designated in the information with certainty. Without such information it would be impossible

for the defendant to make his defense and such information is always given and required in indictments for libel, fraud and similar offenses.

The difficulty resulting from the form of indictment used in this case was very well illustrated by the following colloquy which occurred when the jury returned into court after seven hours' deliberation:

"The Court: Ladies and gentlemen of the jury, have you agreed upon a verdict?

"The Foreman: Your Honor, we are not ready. We wish some further instructions or interpretation of a portion of the indictment. Some of us don't seem to be able to quite grasp the meaning of the wording, and we were rather wandering in the dark, because we don't know what it means.

"The Court: I don't know that the court could go very far, other than read the indictment to you. You might state the question that you desire to be instructed upon.

"The Foreman: Shall I read this portion of the indictment some of us do not understand?

"The Court: What?

"The Foreman: Should I read the portion—

"The Court: I don't know that there is any particular objection to your reading it. You may read it if you desire.

"The Foreman: This indictment charges that Mr. Taylor did then and there unlawfully—this is the portion that we do not understand: 'By spoken and written words, and by personal conduct advocate, teach, aid and abet criminal syndicalism, and the duty, necessity and propriety of committing crime, sabotage, violence and unlawful methods of terrorism as a means of accomplishing a change in industrial ownership and control, and as a means of effecting a political change.' . . .

"The Foreman: And then going to the other portion of the third count: 'That the said John C. Taylor did then and there unlawfully, willfully, wrongfully'—this is the part—'by spoken and written words justify an attempt to justify criminal syndicalism, and the commission and attempt to commit crime, sabotage, violence, and unlawful methods of terrorism, with intent then and there to approve, advocate, and further the doctrine of criminal syndicalism.' . . .

"The Foreman: This is the portion we do not understand. They don't both mean the same thing."

The court thereupon read sections 1 and 2 of the Criminal Syndicalism Act and the instructions given on the second and third counts of the indictment and read the third count of the indictment as follows:

"And the said John C. Taylor is accused by the Grand Jury of said County of Alameda, by this indictment, of the crime of felony, to wit, a violation of an act entitled 'An act defining criminal syndicalism and sabotage, prescribing certain acts and methods in connection therewith, and in pursuance thereof, and providing penalties and punishments therefor,' approved April 30, 1919, committed as follows: That the said John C. Taylor, prior to the time of finding this indictment, and on or about the 28th day of November, A. D. 1919, at the said County of Alameda, State of California, did then and there unlawfully, willfully, wrongfully, deliberately and feloniously, by spoken and written words, justify and attempt to justify criminal syndicalism, and the commission and attempt to commit crime, sabotage, violence and unlawful methods of terrorism, with intent then and there to approve, advocate and further the doctrine of criminal syndicalism.

"If you are satisfied, to and beyond all reasonable doubt, that the said John C. Taylor, on or about the time alleged in the indictment, and within three years prior to the finding thereof, in the County of Alameda, did then and there, by either spoken or written words, justify or attempt to justify criminal syndicalism, as that term has been defined in the statute referred to, or the commission or attempt to commit crime, or sabotage, or violence, or unlawful methods of terrorism, with intent then and there to approve or advocate, or further the doctrine of criminal syndicalism; then and in such case you should find the defendant guilty under such third count.

"Let me repeat, ladies and gentlemen of the jury, do you feel any clearer now than you did before, on the questions that were bothering you concerning these two counts? The second count in the language, that you have mentioned, Mr. Rowe, reads:

" " 'And by personal conduct advocate, teach, aid and abet criminal syndicalism, and the duty, necessity and propriety of committing crime, sabotage, violence, and unlawful methods of terrorism as a means of accomplishing a change

in industrial ownership and control, and as a means of effecting a political change.'

"Foreman H. D. Rowe: Yes, your Honor.

"The Court: That is the second count. You will see that it speaks, or charges the defendant, rather, that he did then and there by spoken and written words, and by personal conduct, advocate, teach, aid and abet criminal syndicalism, and the duty, necessity and propriety of committing crime, sabotage, violence, and unlawful methods of terrorism, as a means of accomplishing a change in industrial ownership and control, and as a means of effecting a political change.

"And the language in the third count that you have pointed out reads as follows—or charges in the following language:

"'Did then and there unlawfully, willfully, wrongfully, deliberately and feloniously, by spoken and written words, justify and attempt to justify criminal syndicalism, and the commission and attempt to commit crime, sabotage, violence, and unlawful methods of terrorism, with intent then and there to approve, advocate, and further the doctrine of criminal syndicalism.'

"The Court: Do you see the difference now, ladies and gentlemen of the jury?

"A Juror: I do, your Honor.

"The Court: And the other ladies and gentlemen of the jury, do they see the difference in these two counts?

"The Second Juror: They are so much alike.

"The Court: You understand the language itself, do you not?

"The Second Juror: Yes, your Honor.

"The Court: One speaks of willfully, wrongfully, deliberately and feloniously by spoken and written words justify and attempt to commit crime, sabotage, violence and unlawful methods of terrorism with intent then and there to approve, advocate and further the doctrine of criminal syndicalism and the other count in the language pointed out charges that the defendant did then and there unlawfully, willfully, deliberately and feloniously by spoken and written words and by personal conduct, advocate, teach, aid and abet criminal syndicalism, and the duty, neces-

sity and propriety of committing crime, sabotage, violence, and unlawful methods of terrorism, as a means of accomplishing a change in industrial ownership and control, and as a means of effecting a political change.

"It would seem that that count charges the defendant with—that the defendant by spoken and written words and personal conduct advocated, taught, aided and abetted criminal syndicalism, and the duty, necessity and propriety of committing crime, sabotage, violence and unlawful methods of terrorism as a means of effecting a change in industrial ownership and control, and as a means of effecting a political change. While the other count in the language that no attention has been drawn to, charges that he did then and there unlawfully, willfully, wrongfully, deliberately and feloniously by spoken and written words, justify and attempt to justify criminal syndicalism, and the commission and attempt to commit crime, sabotage, violence and unlawful methods of terrorism, with intent then and there to approve, advocate, and further the doctrine of criminal syndicalism.

"Are you satisfied now, do you believe, ladies and gentlemen?

"The Foreman: I am.

"The Court: And you and each of you?

"(The jury answer in the affirmative.)

"The Court: Very well. I hope I have made it plain in discussing or rather, giving the instructions. *I kept close to the legal verbiage for the reason that it was the proper thing and the duty of the Court, and the Court had to do it. I do not desire to analyze the language of the count, since it is in the lawful words and terms that you find it in.*" (Italics ours.)

Thirty-five minutes after these instructions were given the jury returned with a verdict against the defendant on two counts. They could not agree on the other counts.

There were twenty-five exhibits offered by the people, thus summarized in the reporter's transcript:

1. Song.
2. Manifesto.
3. Press and Propaganda Report.
4. Statement of Delegates.

5.   Platform and Program.
6.   The Truth.
7.   Ohio Socialist.
8.   Committee on Credentials Report.
9.   Report State Conv. World Nov. 14.
10.  Letter of Katterfeld.
11.  Syndicalism.
12.  Charter.
13.  Minutes.
14.  I. W. W.; Its History, Methods, etc.
15.  General Strike, by Haywood.
16.  Revolutionary I. W. W.
17.  Joe Hill Songs.
18.  Preamble and Constitution.
19.  Advancing Proletariat.
20.  Sabotage, Elizabeth Curley Flynn.
21.  Songs, to Fan the Flames, etc.
22.  Tenth Convention, I. W. W.
23.  Sabotage, Walker C. Smith.
24.· Sabotage, Emil Pouget.
25.  Resolutions.

[7] In addition thereto there was evidence of speeches and debates participated in by the defendant. There is no reason why the rule pertaining to the trial of libel cases could not be equally applicable to a trial of criminal syndicalism, so far as the relative duty of court and jury with reference to interpretation of documentary evidence is concerned. In a libel case where the language of the article published is clear and definite the court should say whether or not it is a libelous article. (*Van Vactor* v. *Walkup*, 46 Cal. 124; *Tonini* v. *Cevasco*, 114 Cal. 266, [46 Pac. 103]; *Mellen* v. *Times-Mirror Co.*, 167 Cal. 587, [Ann. Cas. 1915C, 766, 140 Pac. 277].)

On the other hand, if the instrument is susceptible of two different interpretations, one of which would be libelous and the other not, it would be for the jury to say, on proper instruction from the court, whether or not the article is libelous under all the circumstances and proofs of the case. (*Van Vactor* v. *Walkup, supra; Tonini* v. *Cevasco, supra; Mellen* v. *Times-Mirror Co., supra.*) If a pamphlet, news-

paper, or article circulated by the defendant is in plain and unequivocal terms, it is the duty of the court to construe the meaning and effect of the document for the benefit of the jury.

It appears from the colloquy above quoted, as well as from the general tenor of the instructions given by the court, that the trial judge felt that it was a more conservative, if not a necessary, course to confine the instructions and observations of the court to the general language of the statute and indictment. In view of the general and comprehensive character of these statements the jury should have been more definitely informed, not only concerning the nature of the charge, but the character of the evidence sufficient to support the charge. It is evident that the trial court took the view that the statute was dealing with a course of conduct on the part of the defendant, that is to say, if the defendant in various ways, by pamphlets, by speech, by circulars, newspapers and posters advocated sabotage, this course of conduct in its sum total constituted a violation of the law. On the contrary, as already pointed out here and in the case of *People* v. *Steelik, supra,* each separate act constitutes a crime. The only way in which the sum total of these acts can properly be presented under one charge is where they resulted in the actual commission of crime or are a part of propaganda carried on by an organization and are thus pertinent, not for the purpose of showing the separate acts of crime, but for the purpose of proving the character of the organization with which the defendant has wrongfully affiliated himself.

In view of the general nature of the charges, of the wide scope of the evidence, and the lack of definiteness in the instructions, we would unhesitatingly reverse the judgment if there had been a conviction on counts 2 or 3. We do not agree with the contention of the attorney-general that a charge under this statute in the language of the statute is sufficient. It is true that as to many crimes an indictment in the exact language of the statute is sufficient, but the fundamental rule which controls in the interpretation of the indictment is that announced in section 959, subdivision 6, of the Penal Code: ''That the act or omission charged as the

offense is clearly and distinctly set forth in ordinary and concise language, without repetition, *and in such a manner as to enable a person of common understanding to know what is intended.*" (Italics' ours.)

The indictment in this case is no more illuminating in that regard as to counts 1, 2, 3, and 4 than if the defendant had been merely charged with "violating the statute defining criminal syndicalism found in the statutes of 1919, page 281." This is clearly insufficient.

The suggestions herein contained as to the sufficiency of the indictment as to counts 2 and 3 are made because it is clear from the many informations and indictments called to our attention that district attorneys generally are using the general language of the statute in indictments under the Criminal Syndicalism Act. And, in such cases, it is manifest that great injustice may be done a defendant, by a mass of evidence which may establish the commission of many different offenses, not called to the attention of the defendant with sufficient clearness to enable him to prepare an intelligent defense thereto. This is particularly true where a mass of documentary evidence is admitted to establish the character of the organization to which it is alleged the defendant belongs, and where there is also a general charge of criminal syndicalism under subdivisions 1 and 2 of section 2.

As pointed out in *People* v. *Steelik, supra,* there is no essential difference between "advocating" and "justifying" crime. Either charge covers the other. Hence subdivisions 1 and 2 of section 2 do not state separate offenses.

While appellate courts may be compelled in many cases to affirm convictions under this law, because of article VI, section 4½, of the constitution, because there is no miscarriage of justice in the particular case under review, this fact ought not to encourage a system of pleading or practice under which proper notice of the nature of the offense is given by accident rather than by design. It is well to remember in this type of case that while the defendants may be charged with an attempt to destroy this government, they are as much entitled to its protection, until convicted of crime, as any other citizen or individual, and one of these fundamental rights is that when they are charged with

crime they should know the particular crime they are charged with.

The judgment is affirmed as to count 1 and reversed as to count 4.

Angellotti, C. J., Lennon, J., Lawlor, J., Sloane, J., and Shaw, J., concurred.

Rehearing denied.

All the Justices concurred, except Richards, J., *pro tem.*, and Waste, J., who did not vote.